ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| JORGE ERNESTO RUBIO ÁLVAREZ<br><br>Peticionario<br><br><br>V.<br><br>PAULA ANDREA CAÑAS SILVA<br><br>Recurrida | TA2025CE00588 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2025RF00177 consolidado con AR2025RF00210<br><br>Sobre:<br><br>Custodia-Relaciones Paterno/Materno Filiales |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Jorge Ernesto Rubio Álvarez (Rubio Álvarez o peticionario) solicita que revisemos la determinación recopilada en la *Minuta* que emitió el Tribunal de Primera Instancia, Sala de Arecibo, el 8 de septiembre de 2025[1]. En esta, la juez de instancia denegó paralizar el procedimiento de traslado de dos menores a otra jurisdicción, mientras está en espera de ciertas recomendaciones.

Evaluado el recurso, procedemos a denegarlo.

## I.

El 27 de febrero de 2025 el peticionario Jorge Ernesto Rubio Álvarez instó una *Petición de Relaciones Paternofiliales y Orden* contra Paula Andrea Cañas Silva. En síntesis, alegó, que la

---

[1] Apéndice SUMAC TA, documento 81.

custodia provisional de los hijos de las partes se le había concedido a la recurrida Cañas Silva mediante una orden de protección *exparte*. Solicitó las relaciones paternofiliales provisionales mientras se resolvía lo relacionado a la custodia. Además, expresó su temor de que la recurrida abandonara la jurisdicción con los menores, por lo que, solicitó que se dictara una orden para prohibir la salida de los menores de la jurisdicción.

A petición del peticionario, el 10 de abril de 2025, el foro primario consolidó la acción de los menores con la de divorcio.

El 12 de mayo de 2025, el tribunal de instancia le fijó al peticionario una pensión provisional. Ese mismo día, 12 de mayo de 2025, la recurrida contestó la demanda e interpuso una reconvención. Aceptó ciertas alegaciones de la demanda y explicó que la orden *ex parte* era producto de un caso bajo la Ley 54 (Ley Núm. 54-1989). Solicitó un referido a la unidad social para la recomendación de la custodia de los menores y relaciones filiales.[2]

Así, el 28 de mayo de 2025, el foro de instancia le ordenó a la Unidad Social de Relaciones de Familia que realizara una evaluación social forense.[3] El 5 de junio de 2025, la Unidad Social le informó al tribunal de instancia el plan de trabajo que seguiría.

El 16 de junio de 2025, el peticionario solicitó varias órdenes al TPI. Señaló que desde el 19 de febrero perdió contacto con sus hijos, debido a una orden de protección y por las imputaciones que la demandada le realizó cuando este solicitó las relaciones paternofiliales. Adujo que llevaba más de noventa (90) días sin conocer el estado de salud, educativo y emocional de sus hijos.[4]

El 17 de junio de 2025, la recurrida presentó una *Moción en Solicitud de Traslado de Menores*. Planteó su intención de

---

[2] Apéndice SUMAC TA, documento 24.
[3] Apéndice SUMAC TA, documento 32.
[4] Apéndice SUMAC TA, documento 39.

trasladarse a los Estados Unidos ante la oportunidad de reunirse con su familia, debido a que es allí donde estos residen. Señaló que tuvo que solicitar albergue y que existía una investigación por acciones inapropiadas del padre.[5]

En respuesta, el 30 de junio de 2025, el tribunal primario le ordenó a la Unidad Social que incluyera en la evaluación el traslado de jurisdicción. Además, le ordenó a la señora Cañas Silva a informar el recurso para estudio interjurisdiccional.[6]

Con relación a la solicitud de orden del peticionario, el tribunal primario determinó que, "[p]or la naturaleza de alegaciones todas las preocupaciones del Sr. Rubio deberán canalizarse a través de la trabajadora social asignada al caso."[7]

El 15 de julio de 2025, la Unidad Social presentó una moción para informar las entrevistas que realizaron. En cuanto al asunto de traslado de jurisdicción, informó que la señora Cañas Silva indicó que seleccionó a la Trabajadora Social Nidia Feliberti como el recurso para realizar el estudio interjurisdiccional en el estado de la Florida. Agregó que la Unidad Social coordinará el referido de relocalización con el recurso informado. Aseveró que, "hasta tanto no concluyan las intervenciones activas en el Departamento de la Familia y la División de Delitos Sexuales; la Unidad Social estará imposibilitada de intervenir y emitir recomendaciones que cambien el estado actual de las relaciones paternofiliales."[8]

Ese mismo 15 de julio de 2025, el señor Rubio Álvarez, interpuso una *Moción de Reconsideración, en Cumplimiento de Orden y Solicitud Urgente de Orden.* Allí requirió, que se emitiera una orden a la parte demandada para que no abandonara la

---

[5] Apéndice SUMAC TA, documento 41.
[6] Apéndice SUMAC TA, documento 42.
[7] Apéndice SUMAC TA, documento 43.
[8] Apéndice SUMAC TA, documento 55.

jurisdicción de Puerto Rico con los menores, salvo con una autorización expresa del tribunal.[9]

Luego de otros trámites, el 4 de agosto de 2025, se celebró una vista. El abogado del peticionario excusó su comparecencia por razones de salud, mas, ya iniciada la vista, el demandante se conectó. De la *Minuta* surge que el juez de instancia le ordenó a la Trabajadora Social a continuar el estudio social en cuanto a la evaluación para el traslado de jurisdicción.

El 19 de agosto de 2025, el peticionario Rubio Álvarez, presentó una *Moción en Cumplimiento de Orden, Reconsideración, Solicitud de Órdenes y Referido Inmediato al Departamento de la Familia*.[10] En esta se expresó en cuanto a las alegaciones en su contra y solicitó la paralización del proceso evaluativo para la relocalización, entre otros asuntos.

El 29 de agosto de 2025[11], la Unidad Social presentó una *Moción* con carácter confidencial. Allí aludió a los documentos confidenciales de *Home Study* que realizó la TS Nidia Feliberti y a un documento del Departamento de la Familia.

El 5 de octubre de 2025, se llevó a cabo el juicio en su fondo. De acuerdo con la *Minuta*, el foro de instancia expresó que la trabajadora social no podía comparecer, por lo que solo se atendería el asunto del divorcio. En cuanto a los menores, el Tribunal manifestó que "hasta tanto no culmine la investigación del Departamento de la Familia, la Unidad Social no podrá culminar el informe." El abogado del peticionario expresó que, "había solicitado la paralización del proceso de evaluación para el traslado de los menores fuera de la jurisdicción, hasta que culmine

---

[9] Apéndice SUMAC TA, documento 56.
[10] Apéndice SUMAC TA, documento 73.
[11] Apéndice SUMAC TA, documento 74.

la investigación en curso."[12]    El foro primario determinó lo siguiente: "Con relación al asunto sobre la paralización del proceso de evaluación para el traslado de los menores, No HA Lugar. Se continuará con el proceso, en espera de las recomendaciones que hagan las trabajadoras sociales. El informe interangencial está disponible y cubre todos los detalles sobre donde irán a vivir los menores y donde estudiarán."[13].   Sobre este tema el foro primario determinó lo siguiente: "Se señala vista para discusión de informe para el 7 de noviembre de 2025, a las 9:00 am en la sala 101. Se discutirá el informe de la Clínica Carlos Albizu y las recomendaciones de la TS del Departamento de la Familia y la TS de la Unidad Social."

Luego, procedió con la vista y decretó el divorcio.  En torno a las relaciones paternofiliales el foro de instancia determinó que, "se mantienen suspendidas hasta tanto culmine la investigación en curso."

Insatisfecho con la determinación del foro primario, el señor Rubio Álvarez acudió a este tribunal intermedio y planteó que incidió el Tribunal de Primera Instancia de la siguiente manera:

> Al declarar "no ha lugar" el asunto sobre la paralización del proceso de evaluación para el traslado de los menores, determinando que se continuará con el proceso, en espera de las recomendaciones que hagan las trabajadoras sociales porque el informe interangencial está disponible y cubre todos los detalles sobre dónde irán a vivir los menores y donde estudiarán.

Transcurrido el término concedido a la señora Cañas Silva para presentar su posición al recurso, sin que lo hiciera, damos por sometido el asunto.  Procedemos a expresarnos.

---

[12] Apéndice SUMAC TA, documento 81, página 1.
[13] Apéndice SUMAC TA, documento 81, página 2.

**II.**

**A.**

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023); Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 846-847 (2023); Caribbean Orthopedics v. Medshape et al., 207 DPR 994, 1004 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174-175 (2020); IG Builders *et al*. v. BBVAPR, 185 DPR 307, 337-338 (2012). Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del Foro Apelativo. Torres González v. Zaragoza Meléndez, *supra,* pág. 847; Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016).

En particular, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. Rivera et al. v. Arcos Dorados et al., *supra*; McNeil Healthcare v. Mun. Las Piedras I, *supra*; Mun. de Caguas v. JRO Construction, 201 DPR 703, 709 (2019). En lo que nos atañe, esta regla nos faculta por excepción, a revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Ahora bien, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de

entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), 4 LPRA Ap. XXII-B. Referida regla señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008). Esta dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es norma reiterada que los jueces de instancia tienen gran flexibilidad y discreción para lidiar con el manejo diario y tramitación de los asuntos judiciales. BPPR v. SLG Gómez-López, *supra*, págs. 333-334. La deferencia al juicio y a la discreción del foro sentenciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de

Primera Instancia. Como es harto sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. BPPR v. SLG Gómez-López, *supra*, pág. 334, citando a Mejías v. Carrasquillo, 185 DPR 288, 306-307 (2012).

Así pues, como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. BPPR v. SLG Gómez-López, *supra*, pág. 334; VS PR, LLC v. Drift-Wind, 207 DPR 253, 273 (2021). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. BPPR v. SLG Gómez-López, *supra*, pág. 335; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434-435 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000).

Ahora bien, la discreción cede en las circunstancias en las que se configura un craso abuso de esta o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. BPPR v. SLG Gómez-López, *supra*; Rivera et al. v. Arcos Dorados et al., *supra*. Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso". Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959).

**B.**

La patria potestad se define como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación. Artículo 589 del Código Civil de 2020, 31 LPRA sec. 7241. A su vez, la custodia es un componente de la patria potestad porque impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía. Jusino González v. Norat Santiago, 211 DPR 855, 863 (2023); Torres, Ex parte, 118 DPR 469, 476 (1987).  Entiéndase que, es la tenencia o control físico que tiene un progenitor sobre los hijos. Íd.

Para una determinación sobre custodia, los tribunales están llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso, teniendo como único y principal objetivo el bienestar y mejores intereses de los menores.  Jusino González v. Norat Santiago, *supra*, pág. 864; Muñoz Sánchez v. Báez De Jesús, 195 DPR 645, 651 (2016); Ortiz v. Meléndez, 164 DPR 16, 26-27, (2005).  El Artículo 604 del Código Civil, fija los criterios a considerar en la adjudicación de custodia. 31 LPRA sec. 7283.

Acorde a lo anterior *La Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, Ley Núm. 223 de 21 de noviembre de 2011, 32 LPRA sec. 3181 *et seq*., dispone en el Artículo 7 que, al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con recomendaciones. 32 LPRA sec. 3185.  La aludida disposición legal establece criterios muy similares a los que estatuye el precitado

Artículo 604 del Código Civil, en los casos de adjudicación de custodia de un menor. El Artículo 7 (13) de la Ley Núm. 223-2011, *supra*, contempla, además, que se analice la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres.

Para emitir una determinación en cuanto a los menores, a tenor con el poder de *parens patriae* del Estado, un tribunal puede ordenar la comparecencia de todas las personas que puedan ayudar a determinar la mejor manera de proteger el bienestar del menor. Jusino González v. Norat Santiago, *supra*, pág. 865. Esta responsabilidad incluye, a su vez, la potestad de ordenar las investigaciones de índole social que el tribunal entienda procedentes. A esos efectos, las Unidades Sociales de Relaciones de Familia y Asuntos de Menores tienen como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración. Jusino González v. Norat Santiago, *supra*, pág. 865; Muñoz Sánchez v. Báez De Jesús, *supra*, pág. 652. Es importante que, al dilucidar un cambio de custodia de un menor, el foro judicial cuente con la información más completa y variada que sea posible de modo que pueda resolver acorde. Jusino González v. Norat Santiago, *supra*, pág. 865-866; Peña v. Peña, 164 DPR 949, 959 (2005). Por último, es norma reiterada que las determinaciones de custodia no constituyen cosa juzgada, debido a que están sujetas a revisión judicial de ocurrir un cambio en las circunstancias, siempre que se considere el mejor interés y bienestar del menor. Jusino González v. Norat Santiago, *supra,* pág. 866.

De otro lado, la Ley de la "Guía Uniforme para Casos de Relocalización del Padre Custodio", Ley Núm. 102 de 15 de mayo de 2018, 32 LPRA secs. 3371-3378, reconoce el derecho de un padre custodio a querer relocalizarse en busca de una mejor calidad de vida. Por otra parte, está un padre, con igual derecho, a relacionarse con su hijo y a estar informado de su paradero y situación de vida. Véase Exposición de Motivos, de la Ley Núm. 102-2018. Esta legislación busca salvaguardar el principio del mejor bienestar del menor y le brinda a los jueces las herramientas necesarias que le permitan tomar decisiones que fomenten la sana relación de los padres y el menor. Íd.

El Artículo 6 de la aludida Ley 102-2018, establece en el inciso (a) que se permitirá la relocalización si se prueba que:

> (1) no es para impedir la relación del padre no custodio o persona interesada con el menor,
>
> (2) existe una razón válida y determinante para relocalizarse y
>
> (3) la relocalización ofrecerá una oportunidad de vida tanto para el padre custodio o tutor como para el menor. 32 LPRA sec. 3376.

No obstante, la evaluación de estos criterios no es suficiente para autorizar una relocalización. El inciso (b) de referido artículo desglosa veinte (20) factores que los tribunales deben considerar para salvaguardar el mejor bienestar del menor.

En cuanto a la solicitud de traslado y el informe de la unidad social, en Jusino González v. Norat Santiago, *supra*, pág. 869, el Tribunal Supremo expresó lo siguiente:

> No podemos avalar que se adjudique la solicitud de traslado del menor sin contar con todos los elementos a considerar. Todo lo contrario, debemos viabilizar que esta decisión sea una informada como estatuye la Ley Núm. 102-2018. Los criterios enumerados en la Ley Núm.102-2018 deben ser considerados -en la medida en que apliquen y de una forma u otra- en el Informe Interagencial. **Es decir, dicho informe sirve de apoyo para el Informe Social posterior**

**que la Trabajadora Social rendirá al tribunal y, consecuentemente, servirá para la adjudicación en los méritos**. Lo contrario sería dar paso a una adjudicación de un asunto revestido de alto interés público con una información incompleta y obsoleta.

De no llegar a esta determinación, el foro primario recibiría un Informe Social realizado en parte tomando en cuenta un Informe Interagencial que no considera actualizaciones en aspectos fundamentales. Ello, sin duda no opera a favor del mejor interés y bienestar del menor. (Énfasis nuestro)

A la luz de la antes mencionada normativa, disponemos.

### III.

El peticionario Rubio Álvarez alega, en esencia, que es indispensable, para el informe de la unidad social y para la vista de traslado, que se tome en consideración si las imputaciones criminales que le han hecho son descartadas. Aludió que para la vista de traslado tiene la defensa de la alineación de sus hijos. Señaló que, es necesario esperar el resultado de las investigaciones del departamento de la familia, de la policía de Puerto Rico y de la evaluación de la clínica Albizu para poder celebrar la vista de traslado. Consideró, que permitir o denegar el traslado de sus hijos debía hacerse con extremo cuidado para brindarle estabilidad al entorno familiar de los menores. Adujo que el tribunal incurrió en un abuso de discreción al no paralizar los procedimientos relacionados con el traslado hasta que el peticionario obtenga toda la información, con el fin de velar por los intereses de los menores. Disponemos.

De los hechos que informa esta causa, surge que en la vista celebrada el 5 de septiembre de 2025, el Tribunal determinó que no paralizaría el proceso de evaluación para el traslado de los menores. Aun así, el foro de instancia indicó que se continuará con el proceso, en espera de las recomendaciones que hagan los trabajadores sociales. Consecuente a ello, el TPI o foro primario

pautó una vista para el 7 de noviembre de 2025.  Esto, con el propósito de discutir el informe de la Clínica Carlos Albizu, las recomendaciones de la trabajadora social del Departamento de la Familia y el de la Unidad Social.

Como vemos, al momento en que se presentó el recurso ante nos, se encuentra *sub judice* una vista para evaluar los informes.  De esta manera, el juzgador dio espacio para que culminen las investigaciones pendientes y que se rindan los informes de rigor, para luego discutirlos en una vista.

Esta determinación es afín a la normativa que requiere que el juzgador tenga la información más completa con el fin de asegurarse del mejor bienestar de los menores.  Así pues, antes de emitir una determinación, el foro primario contará con la información necesaria que le ayude en su decisión.

Visto el trámite ante el foro primario y el señalamiento de error, consideramos prudente abstenernos de intervenir.  A la luz de la Regla 40 de nuestro Reglamento, no existe situación excepcional por la cual debamos expedir el auto solicitado.  Tampoco atisbamos abuso de discreción de la magistrada, dentro de la facultad discrecional para manejar el caso ante sí.

## IV.

Por los fundamentos antes expresados, se deniega la expedición del auto de *Certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones